Filed 5/3/13  P. v. Santifer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055446 |
| v. | (Super.Ct.No. INF1101547) |
| COREY DAVID SANTIFER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David B. Downing, Judge.  Affirmed as modified.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Corey David Santifer is serving 33 years to life in prison after a jury convicted him of charges resulting from him punching a man approximately six times

1

and breaking his nose.  In this appeal, defendant argues the trial court: 1) misunderstood the scope of its discretion under the Three Strikes Law to dismiss several prior convictions and sentence him to 16 years instead; and 2) erred when it imposed several fines.  The People concede, and we agree, that the challenged fines must be revised and partially stricken.  However, the trial court fully understood and correctly exercised the limited scope of its discretion under the Three Strikes Law and so we affirm the sentence.

## FACTS AND PROCEDURE

On June 26, 2011, defendant met the victim, Matthew Thompson, at a bus stop in front of a grocery store in North Hollywood.  They chatted and Thompson invited defendant back to his hotel room.  Early the next morning, Thompson asked defendant if he wanted to accompany Thompson to the Coachella Valley, where Thompson lived, to take a chair that was in the back of Thompson's truck to his storage unit in Cathedral City.  The two men drove out to Cathedral City to the storage unit.  According to Thompson's testimony, "[T]he defendant became agitated at the appearance of my storage facility."[1]  Defendant asked for the nearest bus stop and walked away.  Thompson offered to take defendant home, but defendant declined.  This was around 10:00 a.m. on June 27.

---

[1] Defendant did not testify at trial.  He told the probation officer that Thompson had asked him to help move some furniture that was located in Loma Linda, and that they would do drugs afterward.  Defendant said he became wary when he realized their intended destination was Palm Springs rather than Loma Linda, and began to feel nervous about Thompson's motives and plan.

Later that afternoon, Thompson met a homeless man named John and they spent the day together. At about 11:40 that evening, the two men pulled up to a truck stop in Thompson's truck to get something to drink. Thompson saw defendant across the parking lot, waved him over and offered to take him back to Los Angeles. Defendant declined Thompson's offer, waved him off and walked away. However, when Thompson and John got out of the truck to go inside and get a drink, defendant came over and punched Thompson approximately six times on the left side of his face and body, knocking him to the ground. Thompson's nose was broken, his face was swollen and bruised, he had a cut on his left eyebrow, and he had still had pain on the left side of his body at the time of trial nearly five months later.

Defendant was arrested later that evening. In an audio-recorded interview that was played for the jury, defendant told the investigating officer that he did not remember a lot about the attack, but he did admit to punching Thompson. Defendant told the officer that he was angry that Thompson had made a videotape of them having sex and put it on the Internet.[2]

---

[2] This came into evidence only on the audio recording of defendant's jail interview. Defendant did not testify at trial. In his interview with the probation officer, defendant stated that Thompson made a racial slur during their conversation at the truck stop, and that Thompson had initiated the fight. The probation officer noted "The defendant was hesitant to speak of the issue regarding the sexual encounter between him and the victim being on the [I]nternet. He said he was upset that it occurred, but it was not the reason behind the assault." At the *Romero* (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)) sentencing hearing, defendant told the trial court, but not while under oath, that, with regard to the sex tape being put on the Internet, "that actually happened." However, defendant had not seen the tape personally, but rather stated he had been told about it.

On September 8, 2011, the People filed an information charging defendant with one count of unlawful use of force resulting in serious bodily injury (Pen. Code, § 243, subd. (d))[3] and one count of assault with force likely to result in great bodily injury (§ 245, subd. (a)(1)). The People also alleged that defendant personally inflicted great bodily injury during the assault (§ 12022.7, subd. (a)) and had six prior strike convictions for first degree burglary (§§ 667, subds. (a), (c) & (e)(1); 1170.12, subd. (c)(1)) and a prior serious felony conviction (§ 667, subd. (a)).

Defendant's trial began on November 7, 2011. On November 9, the jury found defendant guilty of both counts and found true the great bodily injury allegation. On November 14, 2011, the trial court found true the allegations that defendant had six prior strike convictions and a serious felony conviction.[4]

On December 15, 2011, defendant filed a motion under *Romero* asking the trial court to exercise its discretion to dismiss his six prior strike convictions. The People filed its opposition on December 19, 2011. On January 13, 2012, the court considered the issue at length and strongly prompted each of the parties to argue its case for or against granting the motion.

---

[3] All section references are to the Penal Code unless otherwise indicated.

[4] The facts of defendant's prior criminal history as found by the trial court are as follows. In 1988, at age 20, he pled guilty to six counts of first-degree burglary and received an 88-month sentence. After release, he violated parole on February 1, 1993, and was re-incarcerated. In 1995 he was convicted of two second-degree burglaries and sentenced to 25 years to life. On December 2, 2009, the Los Angeles Superior Court granted defendant's unopposed petition for writ of habeas corpus and released him from prison after dismissing his prior strike convictions.

The trial court expressed its view that "a fair and just sentence in this case but for the strike law" would be 16 years. The court could achieve this sentence by striking all but one of the strike priors, sentencing defendant to four years, doubled for the strike prior, plus three years for the personal infliction enhancement and five years for the serious felony prior. The court stated that it did not like the Three Strikes Law and found it to be "draconian." However, although the court stated that it was "trying to find a reason" to dismiss all but one of defendant's strikes and impose a 16-year sentence it conceded that "I have to follow the law no matter whether I like it or not." The court commented that it did not like Thompson and believed there was more to defendant's motive for the attack than came out at trial. At the conclusion of the hearing, the court denied the motion, reasoning that defendant did not fall outside the scheme of the Three Strikes Law because, although his six strikes happened all the way back in 1988 before the Three Strikes Law was enacted, defendant had not lead a crime free life since then because he has been convicted of second degree burglary in 1995, and his latest felony was a violent attack.

The court sentenced defendant to 33 years to life in prison, consisting of 25 years to life for the assault conviction as a third strike, plus three years for the personal infliction enhancement and five years for the serious felony prior. The court stayed the sentence for the unlawful use of force conviction under section 654. The court imposed a number of fees and fines, including "a $240 restitution fine per count [and] a $240 parole revocation fine per count." This appeal followed.

DISCUSSION

1. *Romero Motion*

Defendant argues the trial court misunderstood the scope of its discretion under section 1385 and the Three Strikes Law when it declined to strike five of his six strike priors, and so the case must be remanded for resentencing. The People respond that the trial court understood and properly exercised its discretion, despite its expressed dislike for the Three Strikes Law. As discussed below, we conclude that the trial court merely recognized the limits placed on its discretion by the Three Strikes Law and correctly exercised that discretion using the approved criteria.

In *Romero,* the Supreme Court held that a trial court has discretion to dismiss three-strike prior felony conviction allegations under section 1385. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) The heart of the analysis is "'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

"Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra*, 33 Cal.4th at p. 378)

We can only conclude that the trial court understood and did not abuse its discretion in declining to strike defendant's prior strike convictions. Again, the court is to consider: 1) the nature and circumstances of the present felonies; 2) the nature and circumstances of the prior strikes; and 3) the defendant's background, character, and prospects. The court reviewed the circumstances of the present felony and, although it expressed dislike for the victim and sympathy for defendant because of the possible motive, the court noted that defendant inflicted great bodily injury on the victim and that the crime was not merely a serious felony, but a violent felony. The court also specifically noted that it would have been able to dismiss the six strikes from 1988 as stale, had defendant not committed new felony second degree burglaries in 1995. Finally, while the trial court did not address at length defendant's background, character, and prospects, it did note that defendant was not able to remain crime free during the short time he was free from custody as an adult. Taken together, these comments by the court demonstrate that it correctly understood and applied the *Romero* factors and therefore neither misunderstood nor misused its discretion.

7

2. *Restitution and Parole Revocation Fines*

Defendant argues, and the People agree, that his restitution fine and parole revocation fine, each set at $240, should each be reduced to $200 because those were the amounts in effect on June 27, 2011, the date defendant committed the current crimes. (Former § 1202.4)  In addition, the parties agree, as do we, that these fines should have been stayed as to the unlawful use of force conviction because that conviction was stayed under section 654.  Defendant is to pay a single restitution fine of $200 and a single parole revocation fine of $200.

## DISPOSITION

The restitution fine and the parole revocation fine attached to the unlawful use of force conviction are stayed.  The restitution fine and the parole revocation fine attached to the assault conviction are reduced to $200 for each fine.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ\
P. J.

We concur:

McKINSTER\
J.

CODRINGTON\
J.

8